Argued and submitted October 7, decision of Court of Appeals affirmed and decision of
circuit court reversed December 23, 1986

STATE OF OREGON,
*Respondent on Review,*

*v.*

MICHAEL GUY WEIST,
*Petitioner on Review.*

(TC 10-84-08687; CA A36625; SC S33052)

730 P2d 26

David J. Phillips, Public Defender Services for Lane County, Eugene, argued the cause for petitioner on review. With him on the petition were Robert C. Homan, Eugene.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

LINDE, J.

## LINDE, J.

The chief issue presented by this and a companion case also decided today, *State v. Weist,* 302 Or 379, 730 P2d 25 (1986), is whether Oregon law permits a magistrate to issue a warrant to search a motor vehicle for evidence that it had been unlawfully registered, an "infraction" under the motor vehicle code, *former* ORS 481.130 (*repealed by* Or Laws 1983, ch 338, § 978). The Court of Appeals reversed an order of the circuit court suppressing evidence seized under a second warrant obtained in consequence of such a search, *State v. Weist,* 79 Or App 808, 720 P2d 755 (1986), and defendant petitioned for review. We affirm the decision of the Court of Appeals, but on different grounds.

An officer of the Eugene Police Department obtained the initial search warrant from the district court after being informed by a dealer in truck parts that defendant in 1982 had acquired the frame of a wrecked Datsun pickup truck without any of its operating parts, and after determining that defendant in 1984 obtained a license from the Oregon Department of Motor Vehicles for a 1982 Datsun pickup truck bearing the same vehicle identification number as the wrecked truck. The officer's affidavit stated that he had probable cause to believe that the truck was unlawfully registered because it was not registered as a reconstructed vehicle, as required by *former* ORS 481.130. The district court on October 17, 1984, issued a warrant to "seize and search the above-described vehicle" for "evidence of the crime of Illegal Registration of a Motor Vehicle."

The following day the same officer filed a second affidavit, in which he reported that he had identified the truck seized under the first warrant as a 1982 Datsun pickup truck which had been reported stolen by its Portland owner, that the motor number of the seized vehicle corresponded to the motor number of the stolen vehicle, that the dashboard vehicle identification number was the same number as the number on the wrecked truck, and that he knew it to be common practice in vehicle thefts to change this number by replacing the entire dash of a stolen vehicle. The affidavit further stated that the keys and the original dashboard of the stolen pickup truck were missing, as well as a canopy described by the owner, and that the officer had probable cause to believe that they could

be found at the residence where the pickup was seized. The district court issued a second warrant to search the residence for these items, and the pickup canopy and keys were seized along with other items of property.

Charged with theft and unauthorized use of the vehicle, defendant moved to suppress all evidence resulting from the search of the residence. The circuit court allowed the motion to suppress on grounds that the affidavit for the first warrant incorrectly described "Illegal Registration of a Motor Vehicle" as a "crime," that in fact such illegal registration is not a crime but a Class C traffic infraction and a search warrant for evidence of such a "crime" was unauthorized under the search warrant statutes, and that "the magistrate was only authorized to issue a warrant for the search for property that was used in the commission or concealment of such a non-criminal offense," as distinct from "evidence" of the offense.[1]

The search warrant statute in question, ORS 133.535, provides:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

The statute distinguishes between commission of a "criminal offense" and commission of an "offense." As the circuit court correctly stated in ruling on defendant's motion, a search warrant may be issued under paragraph (1) for "evidence of or information concerning" a criminal offense, but with respect to an "offense" that is not a "criminal offense," paragraph (3)

---

[1] While the circuit court found that "the second search warrant was issued as a result of information obtained through the execution of the first search warrant," the court purportedly reserved ruling on whether "observations" made by the police officer executing the first warrant might provide an independent basis for the issuance of the second warrant.

allows a search only for property used or possessed to be used to commit or conceal commission of the offense.

"An offense is either a crime or a violation or an infraction." ORS 161.505. Clearly an infraction, such as violation of *former* ORS 481.130, is not a crime. Nevertheless, the state argued on appeal that an infraction is not only an "offense" for purposes of ORS 133.535 but a "criminal offense." Faced with the distinction in ORS 133.535 between an "offense" and a "criminal offense," the state's brief argued that "the intent is to distinguish 'criminal offenses' * * * from 'offenses' against good taste, good manners, or perhaps the entire civil or administrative law." This argument implies that the legislature in paragraph (3) meant to authorize warrants for police officers to search for and seize property used in the commission of an offense against good taste and good manners, or perhaps in a breach of contract. We rather doubt that this is what the legislature had in mind.

The Court of Appeals did not accept the state's imaginative argument, but it nevertheless held that an infraction is a "criminal" offense. The court cited ORS 153.270(3), which provides that "the criminal and criminal procedure laws of this state relating to a violation" also apply to an infraction except as otherwise provided by statute. The section does not help the court's opinion, because violations (defined in ORS 161.565) also are not "criminal offenses" for purposes of the distinction between paragraphs (1) and (3) of ORS 133.535. To the contrary, ORS 133.535 expresses a clear policy choice to allow search warrants for *property* used to commit or to conceal any type of "offense" within the meaning of ORS 161.505, but to allow warrants to search for and seize *evidence* other than property so used only for those offenses classified as "criminal."

This, however, is not the end of the case. The prosecutor also argued to the circuit court that the reference to the "crime" in the officer's affidavit was surplusage and that paragraph (3) of ORS 133.535 authorized the warrant for the vehicle as "property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission" of its unlawful registration. The affidavit included these statements:

"As part of my duties as a police officer, I verified that Mr.

Michael Wiest, 50 East 30th Ave., Eugene, Lane County, Oregon licensed a 1982 Datsun King-Cab four-wheel pickup truck on August 15, 1984 and was issued Oregon license ESR 089 by The Department of Motor Vehicles. At the time, the vehicle was licensed, it was not licensed as a reconstructed vehicle as required by ORS 481.130, in view of the fact that the frame, - and title, purchased by Michael Wiest from Olsen's Light Truck Parts constituted a "totaled" vehicle. The vehicle was sold minus running gear, an engine, a transmission, a rearend, radiator, steering gear, tires or wheels or any of the other parts normally associated with a vehicle purchase. The identification number of the recently registered vehicle belonging to Mr. Wiest is identical to the vehicle number of the wreck purchased in 1982 from Olsen's Light Truck Parts * * *."

The affidavit asserted that this information provided probable cause to believe that "the 1982 Datsun King-Cab four-by-four pickup truck bearing Oregon license ESR 089 is a reconstructed vehicle not registered as such and constitutes evidence of the offense of Illegal Registration of a Motor Vehicle." It concluded with a prayer for a warrant for seizure and search of the described pickup truck "for evidence of the crime of Illegal Registration of a Reconstructed Motor Vehicle."

The affidavit first correctly described the suspected illegal registration as an "offense" and only in the concluding prayer as a "crime." Both the affidavit and the search warrant were limited to the identified vehicle itself, which was "property" believed to be used to commit (possibly also to conceal) the illegal registration of the vehicle and therefore was a proper subject of a warrant under paragraph (3) of ORS 133.535. Defendant argued below that only the vehicle title was so used, but the title would not make out the infraction unless the vehicle itself was "reconstructed." Of course, the deputy district attorney who drafted the documents should not have used the terms "crime" and "evidence." But when the affidavit specifies property to be searched for and seized and its use in an offense within paragraph (3) of ORS 133.535, the warrant need not be invalidated merely for mislabeling legal conclusions unless the mistake had some practical effect.

Defendant also contends that the legislature could not constitutionally authorize the use of search warrants in the investigation of violations, infractions, or other non-criminal offenses. The contention is somewhat unusual; more

common are arguments that a warrant is required for an entry, a search, or a seizure in noncriminal contexts such as investigating fires, conditions of buildings or machinery, contents of student lockers, impounded vehicles, or personal belongings of a person not under arrest.[2] Novelty, of course, does not prove a contention wrong, but a claim that the constitution does not allow a search or seizure under a legislatively authorized judicial warrant presumably means that it does not allow such a search or seizure at all.

We do not believe that Article I, section 9, of the Oregon Constitution or the federal Fourth Amendment limit warrants to investigations of crime or forbid the seizure and search of the pickup truck under the warrant issued in this case. Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The text does not specify enforcement of criminal laws, unlike Article I, sections 11 and 12, which refer to "criminal prosecutions." Besides the historic objection to general warrants, the function of the guarantee is to subordinate the power of executive officers over the people and their houses, papers, and effects to legal controls beyond the executive branch itself. One measure of control is found in a carefully limited judicial warrant; another is found in legislative enactments defining

---

[2] *See, e.g., Michigan v. Tyler,* 436 US 499, 98 S Ct 1942, 56 L Ed 2d 486 (1978)(warrantless entry to extinguish fire and determine its cause and warrantless seizure of evidence while inspecting premises held not to violate Fourth Amendment); *Marshall v. Barlow's, Inc.,* 436 US 307, 98 S Ct 1816, 56 L Ed 2d 305 (1978)(warrantless search conducted at work area of employment facility violates Fourth Amendment); *State in Interest of T.L.O.,* 94 NJ 331, 463 A2d 934 (1983)(finding students have a reasonable expectation of privacy in the contents of their lockers), *rev'd on other grounds, New Jersey v. T.L.O.,* 469 US 325, 105 S Ct 733, 83 L Ed 2d 720 (1985); *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984)(under specified conditions, inventory of contents of impounded automobile is not inherently "unreasonable" if properly authorized); *State v. Perry,* 298 Or 21, 688 P2d 827 (1984)(warrantless search of luggage of defendant detained for detoxification held improper); *State v. Newman,* 292 Or 216, 637 P2d 143 (1981)(warrantless search of purse in noncriminal, non-emergency situation held "unreasonable"). *See generally,* 3 Lafave, Search and Seizure: A Treatise on the Fourth Amendment §§ 10.1-.11 (1978).

and limiting official authority. Without these controls, executive officers could define and exert their own authority to search and to seize however widely they thought necessary. ORS 133.525 to 133.615 provide both forms of control.

Nothing in the constitutional guarantee, however, limits warrants to evidence of crimes. There are other purposes for which lawmakers may think that compelled access to places or effects, even seizure of persons, may be required besides punishing someone for a crime.[3] A warrant must be based on probable cause, and it cannot authorize an "unreasonable" search or seizure. The gravity of the reason for the search or seizure, which may be expressed in the legislature's classification of an offense or otherwise, doubtless bears on what is unreasonable. A warrant to rip apart a vehicle or tear up the inside of a home in search of less than an ounce of marijuana (possession of which is a violation, ORS 475.992(4)(f)) may well be unreasonable, as defendant argued below.[4]

So might a warrant to rip apart a vehicle to see whether it was registered in a manner constituting a Class C traffic infraction under *former* ORS 481.130, for which the maximum penalty is a $100 fine. The concept of property used

---

[3] ORS 136.613, for example, provides:

"If a witness required to enter into an undertaking to appear and testify, either with or without sureties, refuses compliance with the order for that purpose, the court or magistrate making such order shall commit the witness to the jail of the county or city until the witness complies or is legally discharged."

*See also* ORS 433.035 (providing for the quarantine of persons reasonably believed to be infected with communicable disease who refuse to submit to a medical examination); ORS 426.223 (allowing the retaking of mentally ill persons who have left the custody of the facility to which they have been civilly committed).

*Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960), sustained a search made after entry under an immigration officer's warrant in order to arrest Abel for deportation, but the validity of the warrant was not challenged. *See* 362 US at 230.

[4] *Cf. Hill v. Bogans,* 735 F2d 391 (10th Cir 1984)(strip search of individual detained for traffic offense held unreasonable); *Mary Beth G. v. City of Chicago,* 723 F2d 1263 (7th Cir 1983)(strip search of persons arrested for misdemeanor offenses who were not inherently dangerous and were detained only briefly held unreasonable under the Fourth Amendment).

In *Abel v. United States, supra,* note 2, a 5-4 majority of the United States Supreme Court sustained the intensity of a search incident to an administrative arrest for deportation largely because petitioner had not asked the Court to reexamine two of its prior holdings on the extent of searches incident to valid arrests. *See* 362 US at 235-36.

or possessed for the purpose of being used to commit or to conceal a noncriminal offense must be confined within the bounds for which the legislature employed it in ORS 133.535, but it extends to the vehicle in this case.

This warrant need not be and was not construed too broadly. After impounding the pickup truck, the police officer apparently did no more than open the hood and look at the motor number, which proved to be the motor number of the vehicle previously reported stolen in Portland, whereupon he returned to the district court with an affidavit for a second warrant. A longer and more intensive search might have exceeded the reasonable scope of the first warrant.[5] But it would make little sense to hold that the legislature must make *noncompliance with every regulation* of vehicles, machinery, facilities, products, or services into a crime before it can authorize even judicial warrants on probable cause for inspections necessary to enforce the regulation.

In sum, the Court of Appeals misconstrued ORS 133.535. The circuit court understood the statute correctly, but it should have accepted the state's argument that the warrant was valid because the vehicle was property which probably was used to commit or conceal an offense. For this reason, the decision of the Court of Appeals is affirmed.

---

[5] If warrants would expressly state limits on the time, the extent, and the intensity of a search beyond merely designating its object, needless litigation over what the magistrate reasonably meant to authorize could be avoided.