Argued and submitted August 7, reversed and remanded November 4, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## JOHN STEPHEN BISHOP,
*Appellant.*

(9605-34118; CA A96153)

967 P2d 1241

Andrew D. Coit argued the cause for appellant. With him on the brief was Des Connal.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

Defendant appeals his convictions for delivery and possession of a controlled substance, ORS 475.992(1) and (4), following a stipulated facts trial. He assigns error to the trial court's denial of his motion to suppress evidence acquired as the result of a warrantless search of his person and his vehicle. For the reasons that follow, we conclude that the officers in this case did not have probable cause to arrest defendant for giving false information to a police officer and that the officer detained defendant for longer than was reasonably necessary to investigate and verify his identity after arresting him for failure to present a driver's license. Consequently, the evidence discovered in the ensuing searches must be suppressed.

■ In reviewing the lawfulness of a warrantless search, we are bound by the trial court's findings of historical facts, if they are supported by the evidence. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Officers Watts and Westberry saw defendant's vehicle parked in front of an apartment complex in a high drug area at approximately 2:30 a.m. The officers drove around the block and saw defendant driving in front of them. They followed him for several blocks until defendant made a left turn without signaling, at which time they stopped him.

Watts testified that defendant pulled over in a "timely and reasonable manner." Watts approached the vehicle on the driver's side and Westberry approached the passenger side. Watts noted that defendant was "holding his hands up in plain view towards the window" as they approached. Watts asked defendant for his driver's license, registration and proof of insurance. Defendant provided both the registration and proof of insurance but was unable to produce a driver's license or any form of picture identification; he told the officers his name was "John Bishop." Both the car's registration and insurance identified John Bishop as the owner and insured. When asked for his date of birth and address, defendant provided the identical address as on the vehicle registration with the exception that he said 10th Avenue instead of 12th Avenue. He immediately corrected himself, without prompting, and said that he meant 12th

Avenue. Watts' testimony described it as a "hesitation." Defendant also provided his date of birth.

When asked if he had a valid driver's license, defendant responded that he was not sure. Watts testified: "My understanding was he was waiting on some paperwork, and he just wasn't sure whether it was valid or not." The officers returned to the squad car where they ran a computer check. It revealed that a John Bishop did have a valid driver's license. The check also confirmed the address and date of birth provided by defendant. On cross-examination, Watts conceded that there was nothing inconsistent with the information defendant provided and that received by a computer check.

Watts returned to defendant's vehicle and asked him if there were any "drugs, weapons, anything like that in the vehicle." Defendant responded that there were not. Watts requested permission to search the vehicle and defendant said no. At that point, Watts informed defendant that he was under arrest for failure to display a license, ORS 807.570(1)(b)(A), a Class C misdemeanor. Defendant then said he might have a license and requested permission to search. Watts allowed him to look but defendant did not find his license. Watts handcuffed defendant and conducted a pat-down. He reported feeling a "soft bulge" in the groin area but did not remove anything from defendant at that time. No weapons were found and defendant was placed in the squad car.

Watts testified that, at that time, he was unsure of defendant's identity. He cited three factors leading to that uncertainty: defendant's mistake in providing his address; his uncertainty regarding his license status; and his attempted search for a license after being notified he was under arrest.

The officers then conducted an inventory of the vehicle because they were going to have it towed. That inventory resulted in the discovery of $692 in cash and a small amount of crack cocaine. Defendant was arrested for drug possession and advised of his *Miranda* rights. When asked about the cocaine, defendant responded that he had given a ride to

some friends earlier and perhaps they left it there. At the precinct, a search of defendant uncovered a significant amount of cocaine hidden in his groin area.

Before trial, defendant moved to suppress all evidence obtained as a result of the traffic stop, arguing that the search of his person and the inventory of his vehicle were unlawful warrantless searches in violation of Article I, section 9, of the Oregon Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution. The trial court denied the motion, concluding that the officers had probable cause to arrest defendant both for failure to display and for furnishing false information to a police officer, ORS 807.620. The trial court also concluded that the inventory of defendant's vehicle was lawful pursuant to standard police policy.

The trial court found that the search of defendant and the inventory of his vehicle was justified on two independent grounds. First, the trial court held that the officers had probable cause to arrest defendant for failure to display a license and the searches were valid incident to that arrest. Second, and alternatively, it held that the officers had probable cause to arrest defendant for providing false information to a police officer, justifying the searches. The two alleged crimes require independent analysis. We address first whether the officers had probable cause to arrest defendant for providing false information.

■   ORS 807.620(1) provides:

"A person commits the offense of giving false information to a police officer if the person knowingly uses or gives a false or fictitious name, address or date of birth to any police officer who is enforcing motor vehicle laws."

Probable cause exists when an officer subjectively believes that a crime has been committed and that belief is objectively reasonable in the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). The belief must be that it is more likely than not that a crime has been committed. *State v. Spruill*, 151 Or App 87, 90, 948 P2d 726 (1997). Therefore, to establish that Watts had probable cause to arrest defendant for providing false information, the state was required to

prove that Watts subjectively believed that it was more likely than not that defendant had given him a false name or a false address and that that belief was objectively reasonable. Here, Watts' testimony at trial supports the trial court's conclusion that the arrest was based on his subjective belief that defendant had provided a false name or a false address. However, we disagree with the trial court that that belief was objectively reasonable.

The trial court found:

"In Officer Watts' relation of the facts, [defendant] was unknown to them and, further, that individual related uncertainty with regard to the status of the Oregon Driver's License. He—if he stuttered or he gave an incorrect address, shortly thereafter corrected himself with regard to what the address was.

"Because of those facts and circumstances, the officers were given a substantial objective basis for believing it was more likely than not that the offense had been committed[.]"

In short, we recognize three facts relied on by the officers and the trial court to establish probable cause that defendant had provided them a false name or false address: (1) his brief mistake and correction regarding his address; (2) his inability to provide any picture identification; and (3) defendant's uncertainty regarding the status of his driver's license.[1] On the other hand, the following facts indicate that defendant did not provide a false name or address. Defendant presented a vehicle registration and proof of insurance card with the same name he gave the officers. He provided his correct date of birth and, as testified by Watts, there were no discrepancies in what he told them and the information they found by computer check.

---

[1] The state urges us to consider other factors as well, such as the time of day, the neighborhood where the stop was initiated, and the fact that defendant placed his hands in plain view toward the driver's window during the initial phase of the stop. We do not consider any of the factors to be worthy of consideration. Each is of little, if any, significance to whether the officers had probable cause to arrest defendant for providing false information.

■     No matter how it is viewed, defendant's brief hesitation and mistake in reciting his address, at best, was nothing more than an innocent stumble. In his testimony, Watts described the correction as a "hesitation" and stated that defendant corrected it "without prompting." Watts never testified that he thought that defendant was attempting to give an incorrect address but then changed his mind, as the state insinuates in its brief. Even considered in the light most favorable to the state, that brief hesitation could not objectively be viewed as providing probable cause for the crime of knowingly giving false information to an officer.

Additionally, the fact that defendant had no form of picture identification provides no objective justification. Providing false information requires an affirmative act: a defendant must "knowingly" provide false information to an officer. The inability of a defendant to provide proof that he *is* telling the truth cannot create an objective reason for believing that he *is not* telling the truth.

Finally, the only objective fact that survives scrutiny is defendant's uncertainty over the status of his driver's license. A person would normally be aware of his or her license status. However, the fact that defendant was uncertain about one fact cannot objectively support probable cause that defendant knowingly provided false information. The officers did not have probable cause to arrest defendant for providing false information to an officer because it was not objectively reasonable for the officers to believe that he had "knowingly" provided a false name or address.

Next, we address whether the officers were justified in arresting and detaining defendant for the crime of failure to carry or present a license. ORS 807.570 provides, in part:

> "(1)   A person commits the offense of failure to carry a license or to present a license to a police officer if the person either:
>
> "(a)   Drives any motor vehicle upon a highway in this state without a license, driver permit or out-of-state license in the person's possession; or

"(b)   Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

"(A)   Upon being lawfully stopped or detained when driving a vehicle.

"* * * * *

"(4)   *A police officer may detain a person arrested or cited for the offense described in this section only for such time as reasonably necessary to investigate and verify the person's identity.*" (Emphasis added.)

Here, the question is not whether the officers had probable cause. Defendant committed the crime when he failed to present a driver's license when requested to do so by Watts. *See State v. Scheer*, 99 Or App 80, 84-85, 781 P2d 859 (1989) (holding that possession of a driver's license is irrelevant to the offense of failing to present a license, which is completed by failing to present the license when requested to do so by an officer). The question is whether the officers detained defendant only for such time as was "reasonably necessary" to "verify" his identity. ORS 807.570(4). Specifically, we are called on to determine the limits of ORS 807.570(4) regarding what length of detention was reasonably necessary to investigate and verify defendant's identity.

The state argues that "it was necessary to take defendant to the police station to verify his identity by using the computer imaging system available at the station."[2] The state asserts that independent facts support the officer's doubts as to defendant's identity: "Chief among them were that defendant was not personally known to either officer and had no picture identification." Defendant argues, on the other hand, that the officers "were satisfied of [defendant's] identity and did not have grounds to take him into custody to further investigate his identity."

■■   A person may be detained for failing to produce a driver's license, ORS 807.570(4),[3] only so long as is reasonably necessary to investigate and verify the person's identity.

---

[2] Neither Watts nor Westberry could remember if he conducted a computer imaging test on defendant at the station.

[3] ORS 133.005(1) defines arrest:

If defendant was detained after his identity was determined, any evidence obtained as a result of that detention must be suppressed. *See State v. Auer*, 90 Or App 459, 463, 752 P2d 1250 (1988). The issue, then, is whether defendant's identity remained in doubt during the entire stop, thereby justifying his continued detention and transport to the police station, or whether defendant's identity was sufficiently determined during the stop, requiring the officers to cite and release defendant.

We have held that a "person who fails to satisfy the officer of his identity may be taken into custody and to jail to give the officer time to ascertain his identity." *State v. Towle*, 102 Or App 643, 646, 796 P2d 1208 (1990). However, we have never decided what level of doubt about a person's identity justifies continued detention. On the one hand, an officer in the field can never be completely certain that an individual who presents no picture identification is who the person claims to be, regardless of whether the information that the person provides is verified. At that level, any person failing to present a driver's license could be arrested and transported to the police station, where finger printing or photo imaging might positively confirm the person's identity. On the other hand, officers in the field are able to verify certain facts and physical characteristics regarding individuals who claim to be someone with a valid driver's license through dispatch or an onboard computer. Normally, the officer's knowledge of those facts compared with the information provided by an individual will give that officer a fair indication of whether the individual is who he or she claims to be.

The plain meaning of ORS 807.570(4) does not require absolute certainty. It provides that a person may be detained "only for such time as reasonably necessary to investigate and *verify* the person's identity." (Emphasis added.) In that context, verify sets the limit of what level of certainty is required of the officer. Verify means to "check or test the accuracy." *Webster's Third New Int'l Dictionary*, 2543

---

" 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense."

(unabridged ed 1993). Thus, pursuant to that statute, an officer may detain an individual for such time as is reasonably necessary in order to check or test the accuracy of the information provided by the individual. In other words, an officer can detain the individual up to and until the information of identity is verified. Once verified, however, detention is no longer reasonably necessary and the individual must be released. However, if, during that verification process, an officer can point to specific, articulable facts that make it more likely than not that the individual is not who he or she claims to be, an officer is justified in continuing the detention and taking whatever reasonable steps are necessary to identify the person. Our review is limited to whether those facts are objectively reasonable.

Application of that standard serves two purposes. First, it allows the officer to arrest and detain an individual for such time as is reasonably necessary to be satisfied that the officer is issuing a citation to the correct person. Second, it prohibits the arbitrary abuse of that statute by not allowing officers to use it as a ploy to conduct otherwise unauthorized searches.

As applied to this case, it becomes apparent that defendant's continued detention and transport to the police station was not reasonably necessary. Defendant provided his name, his address and his date of birth. The officer's check verified that information and provided no other information that otherwise contradicted defendant's assertion of his identity. The only fact that might raise a doubt about defendant's identity was his uncertainty regarding his license status. However, that fact is not enough to raise an objectively sufficient doubt that defendant was not who he claimed to be when compared against the other information

---

[4] In this case, the only evidence found at the scene of the stop was the result of an inventory of defendant's vehicle. Because we hold that the officers were not allowed to take defendant back to the police station, there would have been no need to tow his vehicle or conduct an inventory. Thus, that evidence must be suppressed. However, we render no opinion on whether the pat-down search of defendant was lawful. Although Watts testified that he felt a "soft bulge" in defendant's groin area during that search, which later was found to be packets of cocaine, that evidence was obtained after defendant was searched more thoroughly at the station. We

confirming his identity. All evidence acquired as a result of defendant's continued detention must be suppressed.[4] *Auer*, 90 Or App at 463.

      Reversed and remanded.

---

note that a search incident to arrest for failure to display is limited to a search for weapons, because there is no reason to search an individual for evidence of that crime, which is complete upon noncompliance. *State v. Ching*, 107 Or App 631, 634, 813 P2d 1081 (1991). Additionally, an arrest for failure to display does not author- ize an officer to search a defendant's vehicle incident to that arrest. *State v. Claxton*, 140 Or App 168, 172, 915 P2d 421 (1996).