GARRETT, J.
*597 Defendant appeals a judgment of conviction for possession of heroin and possession of methamphetamine. On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence obtained after she was stopped for a traffic violation. During that stop, defendant failed to present a valid driver's license when requested, a Class C misdemeanor. ORS 807.570(1)(b)(A). According to defendant, the questioning about drug possession occurred after police had obtained all of the information that they needed to cite and release her for failing to present her driver's license, and thus the evidence was discovered during an unlawful extension of the stop. We conclude that the trial court erred in denying defendant's motion and, accordingly, reverse and remand.
We review a trial court's denial of a motion to suppress for legal error. State v. Parnell , 278 Or. App. 260, 261, 373 P.3d 1252 (2016) (citing State v. Farrar , 252 Or. App. 256, 257, 287 P.3d 1124 (2012) ). If the trial court's findings are supported by evidence in the record, we are bound by those findings. Id. (quoting State v. Regnier , 229 Or. App. 525, 527, 212 P.3d 1269 (2009) ). If the trial court did not make express findings of fact, we "presume that the facts were decided in a manner consistent with the trial court's ultimate findings." Id.
The following facts are based on testimony presented at the hearing on defendant's motion to suppress. After observing defendant run a stop sign, Officer Henderson initiated a traffic stop, approached defendant's car, and asked to see her driver's license. Defendant said that she did not have her driver's license with her. Defendant did, however, provide her name, date of birth, and driver's license number from memory, as well as an insurance card. Henderson then asked defendant's passenger, Perkin, for his identification. Perkin provided two credit cards with his name on them and recited his date of birth.
Henderson returned to his vehicle to conduct a records check of both defendant and Perkin. The records check revealed that there was an outstanding arrest *598 warrant for Perkin and an order prohibiting Perkin from having contact with defendant. As for defendant, Henderson concluded that she had provided seemingly accurate information, although Henderson did not believe he could sufficiently verify her identity without photo identification.
Henderson called for a second officer to help arrest Perkin. While waiting for that officer to arrive, Henderson continued to attempt to confirm both defendant's and Perkin's *340 identity and reviewed Perkin's warrant and no-contact order. When Officer Sery arrived, the officers arrested Perkin.
As Henderson processed Perkin's arrest, Sery stood behind defendant's car to observe defendant, who was still seated in the vehicle. Sery saw defendant reach down towards the center console and appear to take a small item from her purse and place it in her bra. Believing that defendant was concealing evidence or contraband, Sery asked defendant about the item. Defendant told him that it was lipstick and that she was "trying to fix her bra." Sery relayed to Henderson what he had seen. At that point, approximately five minutes had passed since Henderson conducted the initial records check to verify defendant's identity.
Henderson arrested defendant for failure to present her driver's license, ORS 807.570(1)(b)(A) (committed when a person fails to present a driver's license when asked to during a lawful traffic stop), and took her to the patrol car, where he then asked her about what Sery had observed. Defendant initially denied concealing anything. Henderson read defendant her Miranda warnings, requested a DMV photo from dispatch to verify defendant's identity, and continued to ask her about whether she had concealed drugs. Defendant then admitted that she had placed heroin in her bra and that she had methamphetamine in her car.
The officers arrested defendant for possession of a controlled substance, searched her person and car, and found heroin and methamphetamine. They transported defendant and Perkin to the police station, where Henderson checked his email and saw that he had received the DMV photo of defendant, further confirming that she had provided *599 accurate identifying information. Defendant was charged with possession of heroin, ORS 475.854, and possession of methamphetamine, ORS 475.894.
Before trial, defendant moved to suppress all evidence that the police obtained after Henderson completed his initial records check. Defendant argued that, at that point, because Henderson had obtained the information reasonably required to verify defendant's identity and was therefore required to cite and release her, he unlawfully extended the stop. The trial court denied the motion and convicted defendant after a stipulated facts trial.
On appeal, defendant generally reprises her arguments below. She concedes both that the initial traffic stop was lawful and that Henderson had probable cause to believe that she violated ORS 807.570(1)(b)(A) by failing to present her driver's license. She contends, however, that the officers unlawfully extended the stop when they failed to release her after verifying her identity in violation of ORS 807.570(4), which provides that a "police officer may detain a person arrested or cited for [violating ORS 807.570 ] only for such time as reasonably necessary to investigate and verify the person's identity," and Article I, section 9, of the Oregon Constitution, which prohibits unreasonable searches and seizures. Thus, she asserts, all evidence obtained during that unlawful extension must be suppressed.
In response, the state first argues that defendant failed to preserve any constitutional argument because her arguments at the trial court were based entirely on a statutory violation. That is, defendant argued only that the officer violated ORS 807.570(4). We disagree. Defendant's memorandum to the court cited Article I, section 9, and several cases discussing the constitutional framework for analyzing warrantless searches and seizures. It is true that defendant's arguments at the suppression hearing mentioned the statute and did not explicitly discuss Article I, section 9, but it is well established that a party making oral argument to the court is not required to reiterate every argument made in the written motion for such arguments to be preserved. See, e.g. , Maxfield v. Nooth , 278 Or. App. 684, 687, 377 P.3d 650 (2016) (citing State v. Walker , 350 Or. 540, 549-50, 258 P.3d 1228 (2011)
*600 ). In addition, at the suppression hearing defendant discussed reasonable suspicion and furtive movements, concepts relevant to the constitutional analysis and not the statutory analysis. The state also framed its arguments to the court in terms of the constitutional framework. See State v. Sepulveda , 288 Or. App. 632, 637, 406 P.3d 169 (2017) (preservation *341 requires that defendant explain her position with enough clarity to allow the trial court to identify and correct any error and also ensures that opposing parties are not surprised, misled, or denied opportunities to respond). In short, on this record, we are satisfied that the trial court and the state were aware that defendant sought suppression under Article I, section 9. Accordingly, defendant preserved her constitutional argument.
The Article I, section 9, prohibition of unreasonable seizures is implicated by two kinds of police-citizen encounters: stops and arrests. State v. Ashbaugh , 349 Or. 297, 308-09, 244 P.3d 360 (2010) (a third category of encounter is a "mere conversation," which requires no justification, and does not implicate Article I, section 9 ). A stop is a seizure that must be justified by reasonable suspicion that a crime or probable cause traffic infraction has been committed; a stop may last only as long as is reasonably required for the officer to complete an investigation. Id. ; State v. Rodgers , 219 Or. App. 366, 370-71, 182 P.3d 209 (2008), aff'd sub nom , State v. Rodgers/Kirkeby , 347 Or. 610, 227 P.3d 695 (2010) (citing State v. Raney , 215 Or. App. 339, 343, 168 P.3d 803 (2007) ). Incriminating evidence that police obtain during an unlawful extension of a stop is subject to suppression. Rodgers , 219 Or. App. at 371, 182 P.3d 209. An arrest is a seizure based on probable cause that a crime has been committed and is temporally limited by a judicial determination of probable cause (i.e. , arraignment within 48 hours). Roberts v. Mills , 290 Or. 441, 444, 622 P.2d 1094 (1981).
ORS 807.570(5) provides that failing to present a driver's license is a Class C misdemeanor. In general, if a police officer has probable cause that a person has committed a misdemeanor, the officer may arrest that person. ORS 133.310(1)(b). ORS 807.570(4) limits this authority, however, in the case of failure to present a driver's license:
*601 "A police officer may detain a person arrested or cited for [the offense of failing to present a license] only for such time as reasonably necessary to investigate and verify the person's identity."
The state contends that the officers did not violate ORS 807.570(4) by failing to release defendant at the scene of the traffic stop because they had not actually verified her identity at that time. The state also argues, however, that we need not resolve that question because, even if the officers did violate the statute, they did not violate Article I, section 9. In the state's view, when, during a traffic stop, an officer develops probable cause to believe that an individual has committed the crime of failing to present a driver's license, the officer may make an arrest and is not constrained by the temporal limitations that Article I, section 9, imposes on a stop. That is, according to the state, this is a "probable cause" case, not a "reasonable suspicion" case, and the "unlawful extension" analysis therefore does not apply. Thus, in the state's view, regardless of whether police violated ORS 807.570(4) by detaining defendant longer than the statute permits, they did not violate Article I, section 9, and defendant is not entitled to suppression based solely on a statutory violation. See ORS 136.432 (providing that, subject to limited exceptions, a "court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision").
Defendant counters that any search or seizure is required to be "reasonable" under Article I, section 9, and the legislature has specifically set the contours of a reasonable detention for violating ORS 807.570(1) by requiring police to detain a person "only for such time as reasonably necessary to investigate and verify the person's identity." ORS 807.570(4).
We agree with defendant. In certain circumstances the legislature may provide context for our understanding of what constitutes an "unreasonable" search or seizure. See State v. Weist , 302 Or. 370, 376-77, 730 P.2d 26 (1986) (the function of Article I, section 9, "is to subordinate the power of executive officers over the people and their houses, *602 papers, and effects to legal controls beyond the executive branch itself. One measure of control *** is found in legislative enactments defining and limiting official authority"). *342 See generally Or. Const., Art. III, § 1 ; Automobile Club v. State of Oregon , 314 Or. 479, 483-89, 840 P.2d 674 (1992) (the legislature may attempt to characterize legislation for constitutional purposes, but the court maintains the ability to make independent determinations of the meaning and effect of such laws within the parameters of the constitution). In Weist , the Supreme Court explained that one consideration in our determination of what may be considered a "reasonable" seizure is the legislature's classification of an offense. Weist , 302 Or. at 377, 730 P.2d 26 ("The gravity of the reason for the search or seizure, which may be expressed in the legislature's classification of an offense or otherwise, doubtless bears on what is unreasonable."). Thus, to use an example provided in Weist , a warrant that purports to authorize police to "rip apart a vehicle to see whether it was registered in a manner constituting a Class C traffic infraction *** for which the maximum penalty is a $100 fine" would be unreasonable in violation of Article I, section 9. Id.
The legislature has classified the crime of failing to produce a driver's license as a Class C misdemeanor-the lowest level offense for which arrest is permitted-and has specifically placed a temporal limitation on arrests for that crime. ORS 807.570(4) - (5). Thus, the legislature has spoken directly to the question of what constitutes a reasonable search or seizure in that context. Although that legislation does not dictate our ultimate resolution of the constitutional question, it certainly "bears on" that issue. Weist , 302 Or. at 377, 730 P.2d 26. Moreover, the state has advanced no reason why our view of the constitutional issue in this context should not be guided by the statute that created the offense. We therefore conclude that, if the officers held defendant for longer than reasonably necessary to "investigate and verify [her] identity," then they violated Article I, section 9.
We turn, then, to the question of whether the officers extended defendant's detention beyond what was permissible. A traffic stop remains lawful for the time "reasonably required" to investigate the traffic infraction and to complete the citation. Rodgers , 219 Or. App. at 370, 182 P.3d 209 ; see also *603 State v. Boatman , 185 Or. App. 27, 32-34, 57 P.3d 918 (2002). As noted, our assessment of what was "reasonably required" in this case is in part informed by statute. Henderson was allowed to detain defendant only for so long as was necessary to "investigate and verify [her] identity." ORS 807.570(4).
The state argues that Henderson's questioning about drugs occurred during an unavoidable lull in his investigation because Henderson could not verify defendant's identity without photo identification, which Henderson did not obtain until arriving at the police station. Defendant argues that Henderson's initial records check at the scene provided sufficient information to verify defendant's identity and for Henderson to cite her for violation of ORS 805.570(1)(b)(A), and that the continuation of the detention after that moment was unlawful. The question therefore reduces to whether Henderson had sufficiently verified defendant's identity, for purposes of the statute, when his records check turned up information consistent with what defendant had given, even without picture identification.
We have addressed this issue before. In State v. Bishop , 157 Or. App. 33, 41, 967 P.2d 1241 (1998), we explained:
"[A]n officer in the field can never be completely certain that an individual who presents no picture identification is who the person claims to be, regardless of whether the information that the person provides is verified."
We went on to explain that "[t]he plain meaning of ORS 807.570(4)does not require absolute certainty." Id. (emphasis added). Rather, the statute only requires that the officer "check or test the accuracy of the information provided." Id. at 42, 967 P.2d 1241. We concluded that, once that occurs, the officer may continue the detention and take additional steps to identify the person only if the officer can "point to specific, articulable facts that make it more likely than not that the individual is not who he or she claims to be." Id. On appeal, our review is limited to whether the officer's stated basis *343 for extending the detention is objectively reasonable. Id.
The facts in Bishop are instructive. There, the defendant was stopped and was asked for his driver's *604 license, registration, and proof of insurance. Id. at 35, 967 P.2d 1241. The defendant did not provide photo identification but provided his name, date of birth, address, registration, and proof of insurance. Id. When the officer ran a records check, all of the information that the defendant provided appeared to be accurate. Id. at 36, 967 P.2d 1241. We held that, because the information provided was internally consistent and because the "officer's check verified [the] information and provided no other information that otherwise contradicted defendant's assertion of his identity," the continued detention was not objectively reasonable. Id. at 42-43, 967 P.2d 1241.
This case is indistinguishable. Defendant provided her name, date of birth, address, insurance card, and driver's license number from memory. Henderson's records check at the scene appeared to confirm that information, and Henderson did not point to any "specific, articulable facts" to suggest, at that point, a likelihood that defendant was not who she claimed to be. On this record, to wait for photo identification was to require an "absolute certainty" that the statute does not contemplate. See id. at 41-42, 967 P.2d 1241.
Because Henderson had sufficiently verified defendant's identity for purposes of ORS 807.570(4) at the conclusion of the records check, he was required to promptly cite and release her. The continued detention was unlawful, and the evidence obtained during that unlawful extension of the stop must be suppressed. The trial court erred in denying defendant's motion.
Reversed and remanded.