Argued and submitted September 11; convictions on Counts 1 and 2 reversed and remanded, otherwise affirmed October 28, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD DEAN MARTIN,
*Defendant-Appellant.*

Malheur County Circuit Court
18CR20788; A170865

477 P3d 452

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants, ORS 813.010(4), and reckless driving, ORS 811.140. He assigns error to the trial court's decision to grant the state's motion *in limine* and admit medical records into evidence that purported to show defendant's blood alcohol content after defendant was in a car accident. Defendant contends that the state did not establish a chain of custody that linked the blood alcohol test to defendant. The state contends that defendant's argument is unpreserved, but concedes that, if the argument is preserved, the trial court erred. *Held*: Defendant sufficiently raised the chain-of-custody issue in a manner that allowed the state to respond and the trial court to rule on a developed record. Therefore, defendant's argument is preserved. Further, the court erred in granting the state's motion *in limine*, and that error was not harmless.

Convictions on Counts 1 and 2 reversed and remanded; otherwise affirmed.

Erin K. Landis, Judge.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Convictions on Counts 1 and 2 reversed and remanded; otherwise affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII) (Count 1) and reckless driving (Count 2).[1] He assigns error to the trial court's decision to grant the state's motion *in limine* and admit medical records into evidence that purported to show defendant's blood alcohol content (BAC) after defendant was in a car accident. Defendant contends that the state did not establish a chain of custody that linked the blood alcohol test to defendant. The state contends that defendant's argument is unpreserved, but the state concedes that, if the argument is preserved, the trial court erred. We conclude that defendant's argument is preserved and the court erred in granting the state's motion *in limine*. Further, that error was not harmless. As a result, we reverse and remand the judgment of conviction on the DUII and reckless driving charges, but otherwise affirm the judgment.

We state the background facts that are relevant to understanding the evidence issue that is on appeal. The state presented two witnesses, an Oregon Department of Transportation (ODOT) employee and an Oregon State Police (OSP) officer. The ODOT employee testified that he and a colleague were driving on Highway 20 near milepost 239 in Malheur County between 4:30 a.m. and 4:45 a.m. on January 27, 2018, when he observed skid marks and a damaged road sign. They found a wrecked pickup truck "quite a ways off the road." Defendant was "perched" against a tire of the truck and appeared "hurt and in distress." Emergency medical personnel and law enforcement were summoned to the scene. While they were waiting for assistance, the ODOT employee observed "quite a few" beer cans, some tools, and a battery charger scattered between the road and the truck. Defendant smelled like alcohol when the ODOT employee got near him.

The OSP officer testified that he arrived at the scene around 5:34 a.m. and noticed "yaw marks" trailing off the

---

[1] Defendant was convicted of those counts following a jury trial. In a separate bench trial, defendant was also found to have violated the vehicle code for failure to properly use a safety belt, ORS 811.210(1)(g), but does not assign error to that aspect of the trial court's decision. A charge of criminal mischief in the second degree was dismissed.

road, a downed sign, damaged fence, and a pickup truck out in a field. The officer observed beer cans in the "debris field" and could smell an odor of alcohol coming from the vehicle. As the officer arrived, defendant was being loaded by the emergency responders for transport to St. Alphonsus Medical Center in Ontario. The officer visited defendant at the medical center approximately two hours later. Defendant had been intubated in a trauma room, and the officer could smell the odor of alcohol in the room. The officer testified that, while in the trauma room, he observed that defendant's BAC was .10. Weeks later, the officer interviewed defendant at the Malheur County Sheriff's Office. Defendant acknowledged driving his truck on the night of the wreck but did not recall being out earlier that evening at a restaurant lounge or consuming alcohol.

Defendant presented two witnesses who were first responders for Vale Fire and Ambulance. One of those witnesses testified that the beer cans at the crash site appeared to be older. She also testified that she had been six to 12 inches from defendant's face when she moved defendant into a "C-spine support" and had not smelled alcohol on him. She acknowledged that she smelled something that may have been alcohol when defendant was rolled over. The other first responder, who testified he was a longtime acquaintance of defendant, also did not smell alcohol when near defendant, but he did smell what could have been the stale odor of beer near beer cans in the back of the wrecked pickup.

Before trial, defendant moved to suppress the content of any medical records observed by the OSP at the medical center and any medical center records that were later subpoenaed by the Malheur County District Attorney's Office. Defendant specifically sought exclusion of the results of a blood alcohol test that was performed at St. Alphonsus Medical Center on the morning of January 27, 2018. Defendant argued that the evidence was unlawfully obtained because, among several other reasons, the test results had "no reported chain of custody." Defendant repeated the argument that "[n]o chain of custody was followed in the preparation of that BAC" at the hearing before the trial court on the motion to suppress. Significant to this

appeal, the medical records relating to defendant's blood-alcohol testing included the following caveat:

> "Specimen analysis was performed without chain of custody. These results should be used for medical purposes only and not for any legal or employment evaluative purposes."

The trial court denied defendant's motion to suppress, stating at one point that it could not reach defendant's subconstitutional, chain-of-custody argument in the context of that motion. The court further stated that defendant had failed to give the state sufficient notice that he intended to address chain-of-custody issues that may require the state to produce foundational witnesses. The court suggested that the issue was better suited to a motion *in limine*. The court expressly reached some issues raised by defendant's motion to suppress but never reached the merits of defendant's evidentiary argument that the blood-alcohol test results should be excluded because there was no chain of custody linking the tested blood to defendant.

Several months later on the eve of trial, the state moved *in limine* to admit defendant's medical records. Defendant filed a memorandum of law in opposition to the state's motion *in limine*. Defendant again contended that the medical center's blood-alcohol testing was inadmissible because the state had not laid a foundation demonstrating a chain of custody linking the tested blood to defendant. As to the issue of preservation, which is central to this appeal, defendant specifically argued that

> "[h]ere, the State has failed to meet the foundational requirement of ORS 813.300(1). There was no chain of custody maintained of any blood sample taken from [defendant] on 1/27/2018, the sample was taken and maintained in the control of St. Alphonsus Medical Center by unknown personnel until the point that results were provided to law enforcement. Without a documented chain of custody, the State cannot prove beyond a reasonable doubt that the sample in question was obtained from [defendant]."

In the same section as the argument above, defendant contended that the blood-alcohol test results could not be used to prove DUII under ORS 813.300 because there was no

evidence that the laboratory used by the medical center met certain accreditation and certification standards mentioned in ORS 813.160(1).[2]

At the hearing on the motion *in limine*, the state, defendant, and trial court all focused on other issues raised by the state's motion and defendant's response, including whether the state had to prove the medical center laboratory was certified to admit the blood-alcohol test results. The parties and court did not address the chain-of-custody issue. Defendant, however, made clear at argument that he was at the hearing to address "just a couple of points to add to my response to the motion, essentially." In other words, defendant was not abandoning any arguments raised in his written response. The court ultimately granted the state's motion *in limine*, admitting portions of the medical center records, including the blood-alcohol test results, while ordering the redaction of certain prejudicial statements in the records that were unrelated to blood-alcohol testing.

The medical records were then admitted at trial over defendant's continuing objection as state's Exhibit 1. There was no accompanying testimony from a state witness, such as a medical center employee, regarding the steps taken either during or following defendant's blood-alcohol testing. In his opening statement, the state prosecutor referred to Exhibit 1 generally, as well as defendant's .10 BAC result specifically. As noted above, the OSP officer also testified that, while at the medical center, he had observed defendant's BAC was .10.

In a combined argument in his opening brief filed with this court, defendant assigns error to both (1) the trial court's decision to deny his motion to suppress the medical records and (2) its later decision to grant the state's motion *in limine* and admit those records at trial over defendant's objection. At oral argument, however, defendant's counsel stated that the chain-of-custody issue raised in the motion to suppress was rendered "moot" by the trial court's later

---

[2] ORS 813.300 provides when and how blood-alcohol content may be used as evidence that a defendant was driving under the influence of intoxicants. ORS 813.160(1) provides that a chemical analysis is valid under ORS 813.300 when it is performed in certain laboratories or under certain methods.

decision to reach the merits of that issue when granting the state's motion *in limine*. Based on that argument, we understand defendant to ask us to address the merits of the trial court's ruling in his second assignment of error, which assigns error to the court's grant of the state's motion *in limine*. We do so below.

Defendant contends that the trial court erred in granting the state's motion *in limine* to admit the medical records because the state did not demonstrate a chain of custody that showed that the blood-alcohol test traced back to and was, in fact, a test of defendant's blood.[3] As noted above, the state contends that defendant's argument is not preserved, but concedes that, if preserved, the court erred by rejecting the merits of that argument.

We begin with preservation. As a general rule, assignments of error "that were not raised in the trial court will not be considered on appeal" due to the strong policies favoring preservation. *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). We have stated:

> "To preserve an argument for appeal, the appellant must demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court. The appellant must have made the argument with sufficient particularity to allow the trial court to rule on the argument and correct any error."

*State v. Reeves*, 250 Or App 294, 301, 280 P3d 994, *rev den*, 352 Or 565 (2012) (citations and internal quotation marks omitted). There are prudential and pragmatic considerations that underlie the preservation rule that both ensure fairness to the parties and an opportunity for the trial court to confront the issue first based on a developed record. Thus, the Supreme Court has noted that the prudential policies of

---

[3] In a separate argument, defendant also contends that the admission of the medical records without a supporting witness violated his right of confrontation under Article I, section 11, of the Oregon Constitution "to meet the witnesses face to face" in a criminal prosecution. Because we are reversing and remanding this case based on a subconstitutional ground that reaches the same result, namely the exclusion of the blood-alcohol test result on this record, we do not reach defendant's constitutional argument. If this issue arises again on remand, it may arise on a different record.

preservation (1) "[give] a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made"; (2) "[ensure] fairness to an opposing party, by permitting the opposing party to respond to a contention" and avoid surprise; and (3) "[foster] full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it." *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008).

The preservation rules are "pragmatic as well," and "[w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument[.]" *Id*. at 220. The ultimate touchstone is "procedural fairness to the parties and to the trial court." *Id*. In close calls, we have avoided an overly formulaic approach and turned to the practical consideration of "whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *Walker*, 350 Or at 548 (citing *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009)).

Applying those principles, we conclude that defendant sufficiently raised the chain-of-custody issue in a manner that allowed the state to respond and the trial court to rule on a developed record. First, we note that defendant had previously raised the chain-of-custody issue in his motion to suppress, and the court expressly declined to reach the merits of that issue at the suppression hearing, concluding that it was an evidence issue and the state should have an opportunity to address it with a possible witness in a later hearing in the context of a motion *in limine*. The state had been alerted to that issue earlier in the criminal proceeding, and the court had deferred ruling on the merits of the evidence issue. Although defendant's argument in the suppression motion would likely not be sufficient on its own to preserve the issue in an appeal of a separate ruling on a motion *in limine*, the earlier dispute in the suppression motion provides at least some context for the parties' subsequent litigation over the issue in the motion *in limine*.

More importantly, in response to the state's motion *in limine*, defendant raised the specific argument that he

now raises before us, namely that, "[w]ithout a documented chain of custody, the State cannot prove beyond a reasonable doubt that the sample in question was obtained from [defendant]." That argument comprised an entire paragraph of defendant's memorandum of law opposing the state's motion *in limine*, addressed the chain-of-custody issue, and noted the absence of supporting evidence of custody from any medical center employee.

We acknowledge the state's argument that this key paragraph was included within a section addressing a different argument supporting the exclusion of the medical records. Further, defendant's argument mentioned a burden of proof that does not appear relevant to the issue of chain of custody. However, in light of the pragmatic considerations at play in preservation issues, we conclude that defendant's specific written argument addressing the chain-of-custody issue preserved that issue for appeal, particularly in the context of an issue that was similarly disputed earlier in the proceedings and then set aside for an evidentiary hearing. Defendant's argument to the trial court was sufficient to alert the state and the court that defendant was asking the court to deny admission of the blood-alcohol test results, at least in part because the state did not present evidence that the blood tested was defendant's. Although the best practice would have been for defendant to raise the issue again at the hearing on the motion *in limine* to remind the court to rule specifically on that issue, there is no requirement "that each and every argument that has been asserted in writing must be repeated orally in court in order for the argument to be preserved." *Walker*, 350 Or at 550.

Having concluded that the argument is preserved, we turn to the merits of the dispute. As noted, the state concedes that, if the issue is preserved, then the trial court erred in denying the motion *in limine*, because the state did not establish a chain of custody that linked the medical center's blood-alcohol test to defendant. We agree and accept that concession. OEC 901(1) provides that

> "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

We have stated in the context of a DUII case involving a blood draw that a "[s]howing that the blood sample was a valid blood draw from defendant involves laying a traditional chain of custody foundation[.]" *State v. Owens*, 207 Or App 31, 41, 139 P3d 984 (2006), *rev den*, 342 Or 503 (2007). As a general rule, when something is taken from a defendant for the purpose of testing, a foundation must be established through testimony by the persons who had possession or custody of the item taken. *State v. Summers*, 277 Or App 412, 421, 371 P3d 1223, *rev den*, 360 Or 465 (2016). The trial court has discretion to determine how much of a foundation is required under the circumstances to establish that "there is a reasonable probability that the evidence has not been changed in important respects." *Id*. at 421-22.

Here, defendant argued to the trial court that the state did not sufficiently establish that the blood-alcohol test results could be traced back to defendant's blood. The court admitted the test results without a witness and concluded that the medical reports that contained the results were self-authenticating. But those records alone did not provide sufficient support to overcome the challenge to the chain of custody. Indeed, the report stated that the "[s]pecimen analysis was performed without chain of custody." The court erred in admitting the evidence of the blood-alcohol test results over defendant's objection because, on this record, the court could not determine that there was a reasonable probability that the test results traced back to defendant's blood.[4]

We turn to the issue of whether the error was harmless on this record. We must affirm the convictions for DUII and reckless driving if we conclude that there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (interpreting Article VII (Amended), section 3, of the Oregon Constitution). However, we have little difficulty concluding that the improper admission of a blood-alcohol test result in a prosecution for DUII and reckless driving had more

---

[4] We do not conclude that a trial court could never determine a chain of custody for a medical test based on properly admitted medical records alone. We do not reach that issue. Rather, we hold only that the trial court erred in concluding that the medial records in this case could, on their own, establish a chain of custody for the blood-alcohol test results.

than a "little likelihood" of affecting the verdict. Although there was other evidence that defendant drove impaired or recklessly on the morning in question, the blood-alcohol test results were important evidence against defendant, and were highlighted in the state's opening and closing arguments in support of the convictions for DUII and reckless driving. The erroneous admission of the blood-alcohol test results was not harmless.

Finally, the state argues that we should issue a limited remand that remands this case solely for the trial court to conduct a hearing to allow the state to try to cure the chain-of-custody issue and, if it can, the court may reinstate the DUII and reckless driving convictions. The state cites no authority in support of that argument. We are not persuaded by the state's argument to direct such a specific limited remand and, instead, reverse and remand the judgment for the trial court to determine the appropriate nature of the proceedings on remand. *See State v. Plueard*, 297 Or App 592, 595, 443 P3d 1195 (2019) (reaching the same result).

Convictions on Counts 1 and 2 reversed and remanded; otherwise affirmed.