No. 888 October 8, 2025 157

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CARRIE LORRITA COOLBAUGH,
*Defendant-Appellant.*

Polk County Circuit Court
22CR52751; A181874

Monte S. Campbell, Judge.

Submitted June 4, 2025.

Mark J. Kimbrell filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jonathan N. Schildt, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for first-degree robbery, ORS 164.415, and coercion, ORS 163.275, entered after a bench trial. Defendant raises three assignments of error. We affirm.

*Accomplice liability.* In a combined argument, defendant argues that the trial court erred when it found her guilty of first-degree robbery and coercion because it did not "evaluat[e] her conduct under the correct accomplice liability standard."

We "review for legal error whether the trial court properly construed a statute and applied a correct legal theory of criminal liability." *State v. Spieler*, 302 Or App 432, 435, 460 P3d 535 (2020) (internal quotation marks omitted). "Because the trial court found defendant guilty, we state the facts underlying the finding of guilt in the light most favorable to the state." *State v. Cervantes*, 313 Or App 29, 30, 493 P3d 1106 (2021).

In 2022, the victim, J, purchased a Nissan Altima from defendant for $1,500. According to J, a mutual acquaintance had introduced him to defendant and had explained that defendant was selling the Altima so that she could pay her husband's bail. Although defendant provided J a bill of sale, she did not provide the Altima's license plates. Defendant later sent J a friend request on Facebook, identified herself as the Altima's seller, and told him "to come to her house to pick [the license plates] up." J drove a truck to the address that defendant provided, and defendant answered the door. After J entered the residence, defendant's husband—Miskell—and another man emerged from another room. The men pointed firearms at J, and Miskell said, "You think you are such a—such a man coming to my wife's house to get the license plates for the—for the car." The men then sprayed J with pepper spray and stole the truck. The state charged defendant with first-degree robbery, ORS 164.415, coercion, ORS 163.275, and criminal conspiracy, ORS 161.450.

Defendant and Miskell both waived their right to a jury trial and their cases were tried together. At trial, J testified about the foregoing facts. After the state rested,

defendant moved for a judgment of acquittal (MJOA) and argued that "the only evidence that [defendant] has participated in anything was this initial setting of a meeting relating to the car, which is totally removed from anything related to the truck in terms of what happened." The trial court denied defendant's motion. After finding Miskell guilty of first-degree robbery and coercion, it found defendant guilty of the same crimes under an accomplice liability theory. The trial court acquitted Miskell and defendant of conspiracy. This appeal followed.

On appeal, defendant argues that the trial court erred because it "convicted defendant based on her mere presence during the incident and her after-the-fact conduct."

ORS 161.155 provides, in relevant part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2)   With the intent to promote or facilitate the commission of the crime the person:

"* * * * *

"(b)   Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime[.]"

In other words, to convict defendant of first-degree burglary and coercion under an accomplice liability theory, the trial court was required to find that defendant, "[w]ith the intent to promote or facilitate the commission" of first-degree burglary and coercion, aided or abetted Miskell "in planning or committing" those crimes. ORS 161.155.[1] Moreover,

---

[1] "A person commits the crime of robbery in the first degree if the person violates ORS 164.395 and the person:

"(a) Is armed with a deadly weapon;

"(b) Uses or attempts to use a dangerous weapon; or

"(c) Causes or attempts to cause serious physical injury to any person."

ORS 164.415(1). In addition, "coercion requires a person to use fear of a particular consequence as a means to influence or persuade a victim to alter his or her course of conduct—to do something that the victim otherwise would not have done or to not do something which the victim otherwise would have done." *State v. Powe*, 314 Or App 726, 731, 497 P3d 793 (2021) (internal quotation marks and emphasis omitted); ORS 163.275(1) (defining the crime).

"[a]lthough mere presence at the scene of a crime does not constitute aiding and abetting, the least degree of concert or collusion between the parties to an illegal transaction makes the act of one of them the act of all." *State v. Moriarty*, 87 Or App 465, 468, 742 P2d 704, *rev den*, 304 Or 547 (1987) (internal quotation marks omitted).

In acquitting defendant of conspiracy and finding her guilty of first-degree robbery and coercion, the trial court found:

> "[Defendant], if I don't find [Miskell] guilty of the criminal conspiracy, I'm sure not going to find her guilty of that. I don't think that she was conspiring to do this. However, I do think when the robbery occurred that she was involved in it. So she was there when it happened, *she set this deal up*, when it started going south, she didn't extract herself from it. In fact, she left with the same people who were involved in it, and she also went back and told Ms. Lupoli that she was involved in stealing the car, and that stealing was with a firearm, and that would be a robbery.

> "As far as the coercion, the same thing, she was involved in that as well. So she was involved in that from the beginning, clear through the cover up, clear through the running to Salem, clear through the cover up, trying to get the car out of there without being found. So I find her guilty of Count 1 and Count 3."

(Emphasis added.)

Like we concluded in *Spieler*, "[a]lthough some of the trial court's phrasing during its speaking verdict may not have been as clear as ideal, we disagree that what the court said reveals a fundamental misunderstanding of the law." 302 Or App at 440. Here, the evidence supports a finding that defendant acted in concert with Miskell by "set[ting] this deal up." As noted above, the state presented evidence that, after selling the Altima to J, defendant contacted him on Facebook and told him "to come to her house" at 3:00 a.m. to pick up the license plates. Defendant answered the door and was present when Miskell emerged, sprayed J with pepper spray, and stole the truck. And the trial court heard testimony that defendant had said that she and Miskell had stolen the truck. Based on the totality of the evidence and

the context of the trial court's speaking verdict, "we are unpersuaded that the trial court's words" indicate that it convicted defendant based on her mere presence. *Id.*

Moreover, "[s]uch a misunderstanding seems highly unlikely, given the emphasis on the [accomplice liability] issue" in defendant's MJOA and her closing argument. *Id.* Specifically, in her closing argument, defendant "[laid] out exactly what the trial court sitting as factfinder needed to decide in order to render a verdict" and cited relevant authorities and, "[a]s soon as the parties finished closing arguments, the court rendered its verdict." *Id.* at 437, 439 (considering the parties' closing arguments in concluding that the trial court's verdict "was made in accordance with the legal principles and case theories that the parties had presented"). As a consequence, "[c]onsidering the court's speaking verdict as a whole—especially in the context of the parties' arguments," we conclude that the trial court did not err in convicting defendant under an accomplice liability theory. *Id.* at 439.

Seeking a different result, defendant argues that, "by acquitting defendant of conspiracy, the court found that defendant did not intend and agree to assist *any* robbery in advance, let alone the robbery that occurred." (Emphasis in original.) In defendant's view, the trial court's finding that defendant had "set this deal up" merely "reference[d] *** defendant's role in establishing the meeting where Miskell robbed and coerced [J], but it was not a finding that she intended those crimes to occur or encouraged them in advance." We reject that argument.

"Looking at what the trial court said in isolation, there is some plausibility to that argument. However, we do not look at individual statements in isolation, but rather consider them in the context of the parties' arguments and the ruling as a whole." *Id.* When viewing the trial court's statement in context, we understand the trial court to have meant that defendant aided Miskell in the planning and commission of the robbery by selling J the Altima and then luring him to the residence so that they could steal it. *See* ORS 161.155 (defining accomplice liability); *see also Spieler*, 302 Or App at 440 (explaining our understanding

of the trial court's speaking verdict after considering its statements "in context"). The fact that Miskell ultimately stole the truck, rather than the Altima, does not affect our analysis. Indeed, in finding Miskell guilty of first-degree robbery, the trial court found, "I don't think these parties went with the intent to take the pickup. I think they went with the intent to take the car, and when the car wasn't there, they changed." Accordingly, we reject defendant's argument that the trial court "committed legal error in connection with finding [her] guilty." *Spieler*, 302 Or App at 441.

*Hearsay.* In her third assignment of error, defendant argues that the trial court erred when it admitted Miskell's "statements from the surveillance video against defendant."

"We begin with preservation. As a general rule, assignments of error that were not raised in the trial court will not be considered on appeal due to the strong policies favoring preservation." *State v. Martin*, 307 Or App 396, 401, 477 P3d 452 (2020) (internal quotation marks omitted).

We conclude that defendant did not preserve her argument. Although Miskell objected to the video as inadmissible hearsay and the state responded that the statements were "made by the defendants and [were] party opponent statements," defendant made no such objection, nor did she otherwise "adequately alert[] the trial court of her position that the court would err" if it admitted Miskell's statements against her. *State v. Montwheeler*, 277 Or App 426, 437, 371 P3d 1231 (2016) (concluding that the defendant preserved her argument when she "alerted the trial court of her position" and argued that she disagreed with the court's ruling); *cf. State v. Mendoza-Lopez*, 291 Or App 292, 295-96, 419 P3d 761 (2018) (concluding that, even though the defendant "did not explicitly join in codefendant's offer of proof and made no independent argument or objection," the defendant had preserved the issue because the defendant had conveyed "to the trial court and all parties that the defenses were intertwined, and that [the witness] was being offered as a joint witness"). Consequently, defendant did not preserve her argument. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) ("[A] party must provide the trial court with an explanation of his or her objection that is specific enough

to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted."). Further, because "[d]efendant does not request plain-error review in this case," we "do not undertake that analysis." *State v. McIntire*, 328 Or App 328, 335-36, 537 P3d 608 (2023), *rev den*, 372 Or 26 (2024).

Affirmed.