Argued and submitted September 30, reversed and remanded December 2, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MISAEL RUIZ-ESPINOSA,
aka Ernestino Perez-Olivera,
*Defendant-Appellant.*

Lane County Circuit Court
18CR68040; A170733

477 P3d 1233

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894, challenging the trial court's denial of his motion to suppress evidence, *viz.*, a baggie of methamphetamine that a police officer found in defendant's jacket pocket. The officer found the methamphetamine after he stopped defendant's vehicle for a traffic violation and, when defendant produced a consular identification card instead of a driver's license, obtained defendant's consent to search defendant's person for further evidence of his identity. On appeal, defendant argues that the officer unlawfully extended the traffic stop by asking defendant for consent to search. *Held*: Under the circumstances reflected in the record, the state did not meet its burden of proving that defendant continued to be lawfully detained when the officer sought defendant's consent to search. Accordingly, the trial court erred when it denied defendant's suppression motion.

Reversed and remanded.

Maurice K. Merten, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief was Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Reversed and remanded.

**HADLOCK, J. pro tempore**

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, challenging the trial court's denial of his motion to suppress evidence, *viz.*, a baggie of methamphetamine that a police officer found in defendant's jacket pocket. The officer found the methamphetamine after he stopped defendant's vehicle for a traffic violation and, when defendant produced a consular identification card instead of a driver's license, obtained defendant's consent to search defendant's person for further evidence of his identity. On appeal, defendant argues that the officer unlawfully extended the traffic stop by asking defendant for consent to search. Under the circumstances present here, we conclude that the state did not meet its burden of proving that defendant continued to be lawfully detained when the officer sought consent to search. Accordingly, the trial court erred when it denied defendant's suppression motion, and we reverse and remand.

We state the facts consistently with the trial court's findings and its denial of defendant's suppression motion. *State v. Bunch*, 305 Or App 61, 62, 468 P3d 973 (2020). Police officer Durrant stopped the vehicle that defendant was driving because the vehicle's registration was expired. Durrant asked defendant for his driver's license, registration, and proof of insurance. Defendant said that he had only recently purchased the vehicle and did not have insurance for it. In addition, the vehicle was not registered to defendant. Defendant also did not produce a driver's license. Instead, he showed Durrant a Mexican matricula consular card, which does not grant driving privileges.

The consular card that defendant showed Durrant had a photograph of a person on it. Durrant testified at the suppression hearing that he perceived differences between the person shown in the photograph and defendant's appearance during the traffic stop. Specifically, the hairline of the person in the photograph appeared to be further receded than defendant's hairline. In addition, the person in the photograph appeared to have a longer face than defendant did. Durrant confirmed that a DMV entry existed for the

person named on the consular card, but no photograph or driving privileges were associated with the entry.

At that point, Durrant was "not satisfied" that defendant was the person whose photograph was on the consular card. Durrant believed that he needed further proof of defendant's identity, and he asked defendant for consent to search his person for anything else that could identify him. Defendant consented to the search and got out of his vehicle. Durrant checked the contents of defendant's pockets but did not find any further forms of identification. Durrant did, however, find a sandwich bag that contained methamphetamine, and he arrested defendant.

Defendant moved to suppress the methamphetamine evidence, arguing that Durrant had detained defendant "for longer than was reasonably necessary to verify his identity." Defendant argued, based on cases like *State v. Middleton*, 294 Or App 596, 432 P3d 337 (2018), that an officer may continue to detain a person to establish that person's identity (beyond the point that the officer otherwise would release the person) only if the officer can articulate facts reasonably establishing "that it's more likely than not that the individual's not who he or she claims to be." Defendant asserted that Durrant had not articulated facts sufficient to meet that "more likely than not" standard. Specifically, defendant argued that the photograph on the consular card—a copy of which he offered as an exhibit at the suppression hearing—was of a person who resembled defendant, and any differences in appearance did not make it more likely than not that defendant was not who he claimed to be. Defendant suggested that some differences in appearance might be attributable to the fact that the card had been issued in 2014, four years before the traffic stop. Accordingly, defendant concluded, Durrant had unlawfully extended the stop when he requested defendant's consent to search, and the fruits of the search should therefore be suppressed. In addition, defendant argued that his consent to the search was involuntary.

In response, the state argued that Durrant could continue to lawfully detain defendant as long as he was "not satisfied" about defendant's identity based on specific,

articulable facts. The state identified the pertinent facts as the differences that Durrant had noted between defendant and the person in the photograph, as well as defendant's lack of insurance. The trial court denied defendant's motion, and, after a stipulated-facts trial, the court convicted defendant of unlawful possession of methamphetamine.

On appeal, defendant renews his argument that he was being unlawfully detained by the time Durrant requested consent to search. Defendant argues that Durrant unlawfully extended the traffic stop, for purposes of Article I, section 9, of the Oregon Constitution, when he requested defendant's consent to search for evidence of defendant's identity. Defendant asserts that, under *Middleton* and *State v. Bishop*, 157 Or App 33, 967 P2d 1241 (1998), an officer can detain a person for purposes of identifying that person only if the officer can identify facts "indicat[ing] that the person is likely lying about their identity." According to defendant, the facts identified by Durrant do not meet that standard.[1]

In response, the state does not challenge defendant's assertion that Durrant's request for consent to search extended the traffic stop. Nor does the state dispute that, under *Middleton*, the facts that make a police officer suspicious of a person's identity justify extension of a traffic stop only if those facts make it more likely than not that the person is not who the person claims to be. Rather, the state argues that the facts articulated by Durrant—that is, "the observed differences between defendant's facial features and those of the person in the photograph on the consular card"—satisfied that standard. Accordingly, the state concludes, Durrant "acted reasonably in asking for consent to search defendant's person for forms of identification beyond the consular card."[2]

---

[1] On appeal, defendant also contends that the trial court erred when it determined that he had voluntarily consented to the search. Given our resolution of the identification issue under *Middleton*, we need not, and do not, address the voluntariness question.

[2] The state also argues that the trial court's ruling should be understood to encompass an implicit factual finding—based on the trial court's own comparison between the photograph and defendant's appearance in the courtroom—that the differences in appearance were so significant as to make it more likely than not that defendant was not the person depicted on the card. We disagree. The trial court did not indicate in any way that it was relying on its own observation of

The ultimate question presented by this appeal is whether defendant was unreasonably seized in violation of Article I, section 9, when Durrant sought defendant's consent to search for further confirmation—beyond the consular card—of his identity. That question implicates at least three legal standards, related to which party has the burden of proof, what that party must prove, and how an appellate court reviews whether the party satisfied its burden. First, as in other circumstances in which a police officer conducts a search or seizure without a warrant, the state had the burden to establish the lawfulness of the officer's conduct. *See State v. Barber*, 279 Or App 84, 89, 379 P3d 651 (2016) ("It is the state's burden to prove that an exception to the warrant requirement justified a warrantless search or seizure."). Second, as both parties acknowledge, *Middleton* and *Bishop* set out the governing test (*i.e.*, what the state must prove): as applied here, whether Durrant pointed to "'specific, articulable facts that [made] it more likely than not that [defendant was] not who he [claimed] to be.'" *Middleton*, 294 Or App at 603 (quoting *Bishop*, 157 Or App at 42). Third, this court reviews to determine whether "the officer's stated basis for extending the detention is objectively reasonable." *Id*.[3]

---

defendant's appearance; to the contrary, its ruling cited only the facts articulated by Durrant. Moreover, the only evidence about defendant's in-courtroom appearance that was made part of the record was Durrant's testimony that defendant's hairstyle, at the hearing, was similar to the hairstyle of the person in the photograph. Accordingly, the court could not have properly relied on its own perception of any differences between the photograph and defendant's appearance at the hearing in making its decision. *Cf. State v. Stull*, 296 Or App 435, 440, 438 P3d 471 (2019) (prosecutor could not properly comment, in closing argument, on the defendant's conduct in the courtroom when that conduct had not been made part of the evidentiary record).

[3] Both *Middleton* and *Bishop* state that appellate review "is limited" to considering that objective-reasonableness question. *Middleton*, 294 Or App at 603; *Bishop*, 157 Or App at 42. However, neither of those cases presented the question of whether the state also must prove that the officer subjectively believed that the detained person was probably not who the person claimed to be.

Like *Middleton* and *Bishop*, this case does not require us to determine whether the state must prove the officer's subjective belief. Defendant does suggest on appeal that the state did not prove that Durrant "had developed a subjective belief that defendant was *likely* lying about his identity." (Emphasis in defendant's brief.) However, defendant did not make that argument—or indeed any argument at all about the adequacy of Durrant's *subjective* belief—to the trial court. Accordingly, no such argument is properly before us on appeal, and we do not address the point further.

In this case, the state did not meet its burden of proving that the facts identified by Durrant, viewed objectively, established that it was more likely than not that defendant was not who he said he was. The state relies on Durrant's testimony that, first, the hairline in a four-year-old photograph did not look the same as defendant's hairline on the day that Durrant stopped him and, second, that the photograph on the consular card showed a person whose face appeared longer than defendant's. Those facts are "articulable" and, indeed, Durrant articulated them. And those facts may have reasonably led Durrant to be "not satisfied" that defendant was the person identified on the consular card. But, at least as articulated in this case—without detail, for example, about the magnitude of difference between the shape of the face in the photograph and the shape of defendant's face at the time of the traffic stop—those facts do not objectively establish that defendant *probably* was not who he said he was, and that is the test under *Middleton* and *Bishop*. Because the state did not meet its burden to establish the lawfulness of the extended stop, the trial court should have granted defendant's motion to suppress.

Reversed and remanded.