756 December 21, 2023 No. 39

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JASON THOMAS WILCOX,
*Respondent on Review.*

(CC 19CR75468) (CA A175891) (SC S070063)

En Banc

On review from the Court of Appeals.*

Argued and submitted September 12, 2023.

Rebecca M. Auten, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

John Evans, Deputy Public Defender, Office of Public Defense Services, Salem, filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

JAMES, J.

The decision of the Court of Appeals is vacated, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

_____
* On appeal from Washington County Circuit Court, Andrew R. Erwin, Judge, 323 Or App 271, 522 P3d 926 (2022).

**JAMES, J.,**

This criminal case arises from the noncriminal seizure of defendant, pursuant to ORS 430.399(1), the public intoxication law, which provides that "[a]ny person who is intoxicated or under the influence of controlled substances in a public place may be sent home or taken to a sobering facility or to a treatment facility by a police officer." When officers seized defendant for purposes of taking him to a detox facility, they also seized, then inventoried, his backpack, which revealed a butterfly knife. Having previously been convicted of a felony, defendant was ultimately convicted of violating ORS 166.270(2), felon in possession of a restricted weapon.

The Court of Appeals held that the seizure of defendant's backpack was unlawful under Article I, section 9, of the Oregon Constitution. *State v. Wilcox*, 323 Or App 271, 276, 522 P3d 926 (2022). In doing so, the court relied on its decision in *State v. Edwards*, 304 Or App 293, 466 P3d 1034 (2020), which involved the seizure and search of a backpack following a criminal arrest. The state petitioned for review, arguing that the Court of Appeals erred, both in this case, and in *Edwards*. We allowed review and now vacate the decision of the Court of Appeals and remand for further proceedings consistent with the reasoning of this opinion. The Court of Appeals approached its analysis from a mistaken starting point—this case involves an administrative seizure, not a criminal seizure. As such, it is unnecessary to consider whether *Edwards* was correctly decided.

## BACKGROUND

The undisputed facts were set forth by the Court of Appeals:

"Defendant went to a police station to report being assaulted at a nearby transit station. Officer Baisley and his partner, Deputy Quick, responded. When they arrived to take defendant's statement, defendant had been loaded into an ambulance and was ready for transport to a hospital. The officers followed him to the hospital and waited until he was available to discuss the alleged assault. While waiting to enter the exam room, they could hear defendant yelling at the nurses. As Baisley later recalled, defendant was

'[d]isgruntled, argumentative.' When Baisley and Quick were able to enter the exam room, the officers got the sense that defendant was intoxicated. Defendant made it clear that he did not want to talk to them about the alleged assault, so they turned to leave. As they were crossing the parking lot to their vehicle, hospital security stopped the officers to ask for help. Security told the officers that defendant was refusing medical treatment and they were going to discharge him. The officers returned to the exam room, placed defendant in handcuffs, and advised him that he was being taken into custody for transport to a detox facility. Baisley and Quick walked defendant out to the patrol car. Defendant had a backpack with him. Quick conducted a search of defendant's person and then placed him in the patrol car. Meanwhile, Baisley conducted an inventory of defendant's backpack.

   "During the inventory search, Baisley found a butterfly knife. Because butterfly knives are restricted weapons, the officer did a criminal history check on defendant and found that he had previously been convicted of a felony. Quick then arrested defendant for the crime of felon in possession of a restricted weapon, and the officers transported him to the jail rather than the detox facility. Baisley conducted an additional inventory search of the backpack at the jail and found a second butterfly knife."

*Wilcox*, 323 Or App at 272-73 (brackets in *Wilcox*). Defendant was later charged with being a felon in possession of a restricted weapon, ORS 166.270(2), and he moved to suppress the evidence discovered in his backpack. The trial court denied that motion and, thereafter, entered a judgment of conviction.

         On appeal of that conviction to the Court of Appeals, defendant advanced multiple arguments, only two of which are pertinent to our discussion. First, defendant argued that the warrantless seizure of his backpack violated his rights against unreasonable search and seizure under Article I, section 9. Second, defendant argued that the search of his backpack also violated his rights under Article I, section 9. The Court of Appeals viewed the first issue—the seizure of the backpack—as dispositive and did not reach the question of the legality of the search. *Id.* at 273-74.

In holding the seizure unlawful, the Court of Appeals cited to our decision in *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 772 (1997), for the proposition that "a 'seizure' of property occurs when police physically *remove* property from a person's possession." *Wilcox*, 323 Or App at 275 (emphasis in *Juarez-Godinez* ).

Next, the Court of Appeals summarized its decision in *Edwards*:

> "In *Edwards*, the defendant had an outstanding arrest warrant for failure to appear. A police officer spotted her riding a bicycle, wearing a backpack. The officer stopped her and arrested her on the warrant. The backpack was removed from defendant, and she was placed in handcuffs. Once removed, the backpack's contents were examined pursuant to a local inventory policy ***. The defendant moved to suppress the evidence obtained from the search of her backpack on the ground that it had been unlawfully seized without a warrant. The state argued that the seizure was lawful because arresting officers have authority to seize the property of an arrestee. The trial court agreed.

> "We reversed. We concluded that, because the seizure of the backpack occurred without a warrant, the state had the burden of showing that the seizure was justified by a well-established exception to the warrant requirement. *** [A] person's lawful arrest does not allow for the seizure of all the arrestee's personal property. It may authorize a seizure of 'narrow categories' of personal effects, such as effects related to the probable cause for arrest or readily apparent contraband. But the defendant's backpack did not fall within such narrow categories."

*Wilcox*, 323 Or App at 274-75 (citations omitted).

The Court of Appeals concluded that the seizure of the backpack was unlawful, viewing *Edwards* as controlling:

> "In this case too, the state's only argument is that its seizure of defendant's backpack was justified by its lawful seizure of his person for the purpose of transporting him to detox. As we observed in *Edwards*, with the exception of certain narrow categories of property, the lawful seizure of a person does not justify the warrantless seizure of the person's property. And, as in *Edwards*, the state in this case has not established that defendant's backpack falls within

any of the narrow categories of effects that lawfully may be seized upon the seizure of the person."

*Id*. at 276 (citation omitted).

Before us, the state advances several arguments as to why, in its view, the Court of Appeals erred. First, the state argues that the backpack was not seized. As the state argues, "[d]ue to his custodial status, defendant was not able to exercise all the property rights that he otherwise would have had with respect to his backpack. But that was a result of the officers' interference with his *liberty*, not any interference with his *possessory* interests in the backpack." (Emphases in original.) In essence, the state appears to argue that although defendant's person was seized, his property was not also seized.

Additionally, the state argues that, because the officers did not interfere with defendant's right to direct the control of his backpack, it was not a seizure, and alternatively, if it was a seizure, it was a lawful seizure, either because it was analogous to consent or because it was lawful to seize the backpack incident to lawfully taking defendant into custody pursuant to ORS 430.399. The state argues:

> "Under the circumstances here, the police did not interfere with defendant's right to dispose of his backpack in a way other than taking it with him into police custody. Initially, defendant never attempted to exercise any right to transfer possession or otherwise dispose of the backpack, so the officers never interfered with that right. The trial court found that defendant 'ha[d] the backpack with him' when he was in custody, up until he was placed in the car; it was therefore indisputably within his immediate possession and control at that time. And he never asked to or attempted to dispose of the property in some way *other than* bringing it with him. To the contrary, he kept it with him when leaving the hospital and walking to the police car."

(Brackets and emphasis in original.)

Finally, the state argues that the Court of Appeals' decision in Edwards is wrong. According to the state, the "Edwards court first determined—in the abstract—that a seizure occurs when police physically remove property from an individual. In so doing, the court erred by omitting the

first step of the seizure analysis—identifying the possessory interest at issue." Here, the state argues, the seizure of the backpack was derivative of the lawful seizure of defendant's person, what the state terms "a necessary byproduct of the police taking defendant into custody."

Defendant, in turn, argues that the Court of Appeals' seizure analysis was correct. Additionally, defendant renews his challenge to the search of the backpack— the issue the Court of Appeals did not reach. Defendant asks us to review a wide array of Court of Appeals decisions in the area of inventory searches and hold that those decisions are "in unmitigated conflict with this court's long-standing rule that officers may not open closed, opaque containers during an inventory." Defendant argues that "[t]his court should finally disavow the Court of Appeals' rule and reaffirm its own precedent." The state, in response, argues that defendant's call for a sweeping reexamination of Court of Appeals decisions is inappropriate in this case, given that the Court of Appeals did not rule on the search issue.

## ANALYSIS

Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

We begin with the state's argument that the backpack was not seized. Property is "seized," for purposes of Article I, section 9, when there is "a significant interference with a person's possessory or ownership interests in property." *State v. Owens*, 302 Or 196, 207, 729 P2d 524 (1986). As we have noted in the past, that definition is sparse, and "our cases do not offer much in the way of explanation." *Juarez-Godinez*, 326 Or at 6. However, we have clarified that the "seizure of an article by the police and the retention of it (even temporarily) is a significant intrusion into a person's possessory interest" in that property. *Owens*, 302 Or at 207.

The state's first argument in this case is that, "[d]ue to his custodial status, defendant was not able to exercise all the property rights that he otherwise would have had with respect to his backpack. But that was a result of the officers' interference with his *liberty*, not any interference with his *possessory interests* in the backpack." (Emphases in original.) That argument incorrectly makes the issue of whether there was an interference with a possessory interest contingent on the reason for that interference.

Whether the seizure of property is derivative of the seizure of the person will certainly factor heavily into whether the seizure of the property was *lawful*—under the incident to arrest exception, for example—but it does not affect whether the property was seized in the first instance. Said another way, the reason for a seizure will affect the reasonableness, or lawfulness, of the seizure, but it does not affect whether a seizure occurred. Whether something is seized is determined by considering the state's interference with a person's possessory or ownership interests, not the rationale for the interference, and regardless of whether the state simultaneously interfered with other interests, such as liberty interests.

The state then argues that

"[D]efendant never attempted to exercise any right to transfer possession or otherwise dispose of the backpack, so the officers never interfered with that right. *** [H]e never asked to or attempted to dispose of the property in some way *other than* bringing it with him. *** Thus, the officers did not interfere with defendant's right to dispose of the property in some other manner.

"Moreover, the officers did not otherwise engage in any 'show of authority' that would lead a reasonable person to believe that defendant could not ask to dispose of the backpack in a different way."

(Citation omitted).

We disagree with that framing of the issue in two respects. First, to the extent that the state's argument can be read to assert that whether an item is seized or not is determined by a defendant's invocation of a right, that is

incorrect. A person need not affirmatively assert his or her possessory or privacy rights in property. The focus of our search and seizure analysis is first and foremost on the actions of the state. When the state interferes with possessory or ownership interests, even temporarily, the state has effectuated a seizure, regardless of whether defendant objected to, or protested, that interference.

Second, we disagree that the state did not interfere with a possessory interest in this case. A "possessory interest" is defined as "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." *Black's Law Dictionary* 1353 (10th ed 2014). As such, a possessory interest is not merely the right to possess an object, it also includes the right to say who else will *not* possess the object. Thus, we have said that "a 'seizure' of property occurs when police physically *remove* property from a person's possession." *Juarez-Godinez*, 326 Or at 6 (emphasis in original). The act of removal not only deprives a person of possession, it interferes with their right to control who does not possess the item.

When a person is seized and taken into custody, their articles of clothing, and the items in their pockets may, or may not, be seized at the moment of their bodily seizure—a point we need not decide here. But when, after seizing a person, an officer removes items of clothing from the person, or items from the person's pockets, to separate those items from the individual, even temporarily, or holds those items as evidence or otherwise, those items have been seized. Removing those items and reducing them to exclusive control of law enforcement has interfered with the person's possessory rights—their right to possess the item themselves, and their right to exclude others from possessing the items.

We routinely discuss the "seizure" of property incident to arrest. For example, in *State v. Lowry* the "defendant was handcuffed, [and] another officer took from defendant's clothing a small, closed, transparent amber pill bottle which contained a white powder." 295 Or 337, 339, 667 P2d 996 (1983) *overruled on other grounds by Owens*, 302 Or 196, 729 P2d 524 (1986). We noted that "the pill bottle *was seized* in

the course of arresting defendant for a crime with which the bottle had nothing to do." *Id.* at 347 (emphasis added).

The pertinent point in time for our inquiry in this case is the moment just before the officer opened the backpack to search it. At that moment, was the backpack seized? The answer is yes. Regardless of when the backpack might have theoretically been seized, and regardless of whether it had originally been in defendant's control when his person was seized, at the moment before the officer opened it, the backpack had indisputably been removed from defendant's possession and was in the exclusive possession and control of law enforcement. Just as the pill bottle in *Lowry* was seized, despite Lowry's person being previously seized, here whether defendant's right to personally hold the backpack had been diminished due to custody, separating the backpack from defendant and reducing it to the exclusive control of law enforcement interfered with defendant's possessory right to determine who was excluded from possessing the backpack. That was a seizure.

With that explanation, we turn to the central question in this case: whether the backpack was *lawfully* seized. The path to answering that question begins with first properly characterizing what kind of seizure occurred.

Article I, section 9, protects against "unreasonable" search and seizure. Reasonableness is ensured by requiring "a method of extra-executive authorization in advance of searches or seizures." *Nelson v. Lane County*, 304 Or 97, 104, 743 P2d 692 (1987). As we said in *State v. Weist*, 302 Or 370, 376, 730 P2d 26 (1986), one function of Article I, section 9, "is to subordinate the power of executive officers over the people and their houses, papers, and effects to legal controls beyond the executive branch itself."

Article I, section 9, ensures reasonableness by controlling the power of executive officers in two different respects. For seizures and searches conducted for criminal investigatory purposes, control is typically found in the warrant requirement or a judicially recognized exception to the warrant requirement. *See Nelson*, 304 Or at 104 ("Compliance with the warrant clause, or its few exceptions

as this court has interpreted them, itself provides the necessary authorization for searches or seizures intended to discover evidence of crime."). Warrantless seizures and searches "'are *per se* unreasonable unless they fall within one of the few specifically established and limited exceptions to the warrant requirement.'" *State v. McCarthy*, 369 Or 129, 141, 501 P3d 478 (2021) (quoting *State v. Bliss*, 363 Or 426, 430, 423 P3d 53 (2018)).

But, a seizure or search of persons or property can occur outside the criminal investigatory process, in what we have termed an "administrative" seizure or search. *See State v. Atkinson*, 298 Or 1, 8-11, 688 P2d 832 (1984) (establishing analytical framework for assessing the constitutionality of an administrative search or seizure). In that context, we require that extra-executive control be provided by appropriate legislatively imposed limitations sufficient to guarantee constitutional reasonableness. As we noted in *Weist*, "[o]ne measure of control is found in a carefully limited judicial warrant; another is found in legislative enactments defining and limiting official authority. Without these controls, executive officers could define and exert their own authority to search and to seize however widely they thought necessary." 302 Or at 376-77.

In *Atkinson*, we held that the validity of an administrative seizure or search is dependent on two steps. First, we look for a "source of the authority," that is, a law or ordinance providing sufficient indications of the purposes and limits of executive authority. 298 Or at 9. *Atkinson* involved an administrative search of an impounded automobile under *former* ORS 483.351 to 483.396 (1983) *repealed by* Or Laws 1985, ch 338, § 978. *Id.* at 9. That statutory scheme permitted the police to take custody of abandoned vehicles and authorized a lien "on the vehicle *and its contents* to pay storage and towing charges." *Id.* (emphasis in original). In analyzing the constitutionality of that statute, we began by considering the grant of statutory authority—implicitly recognizing three potential levels of authority: none, limited, or broad. *Id.* at 9-11. We explained that the authority to seize property under that statutory scheme was broad and

impliedly authorized a further inventory of the contents of the vehicle. *Id.* at 9. In contrast, we noted that,

> "where government officials are allowed only *limited* authority to take temporary control of personal property— such as to move an automobile after a traffic accident—the officers' authority does not extend to conducting a general inventory of the automobile's contents."

*Id*. at 10 (emphasis added).

Second, under *Atkinson*, if a source of authority exists, we next ask whether the seizure or search was "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the [seizure or search] involves no exercise of discretion by the law enforcement person." *Id*. Thus, just as, in the criminal investigatory context, warrantless seizures and searches are *per se* unreasonable unless they fall within one of the few specifically established and limited exceptions to the warrant requirement, in the administrative context, seizures and searches that occur without complying with the *Aktinson* framework are, *per se*, unreasonable. We have applied those principles in a variety of contexts: seizures and inventories of property for noncriminal purposes, *e.g.*, *Atkinson*, 298 Or at 9-11; administrative seizures for sobriety checkpoints, *e.g.*, *Nelson*, 304 Or at 104-06; and seizures for detoxification holds, *e.g.*, *State v. Perry*, 298 Or 21, 688 P2d 827 (1984).

Here, the parties agree that defendant was brought into police custody, not pursuant to a criminal investigation, but pursuant to ORS 430.399. That statute is noncriminal. Until 1971, public intoxication was a criminal offense. *See former* ORS 166.160 (1969) *repealed by* Or Laws 1971, ch 743, § 432. *Former* ORS 166.160 provided:

> "Any person who enters or is found in a state of intoxication upon any railway engine, railway car, railway train, aircraft, boat, landing wharf or depot of any common carrier, or on any highway or street, or in any public place or building, or any person who creates, while in a state of intoxication, any disturbance of the public in any private business or place, shall be punished upon conviction by a fine of not less than $5 nor more than $100, or by imprisonment in the county jail for a period not exceeding 50 days or both."

Thus, prior to 1971, bringing someone into police custody for public intoxication was appurtenant to a criminal investigation.

However, in 1971, Oregon ended "the longstanding practice of dealing with public drunkenness as a criminal offense." *State v. Okeke*, 304 Or 367, 370, 745 P2d 418 (1987). That change reflected a move from a criminal deterrence model to a public health model. *Id*. As we have stated, ORS 430.399 "was enacted for the purpose of decriminalizing such crimes as 'public intoxication,' and to provide treatment for substance abusers. Although the legislative history is relatively sparse, we conclude that the interest protected by [ORS 430.399] is the prevention of injury to the intoxicated person or to others." *State v. Westlund*, 302 Or 225, 230, 729 P2d 541 (1986) (footnote omitted).[1] It follows then that, when a person or property is seized, or searched, pursuant to ORS 430.399, that seizure is administrative; accordingly, the appropriate framework to consider the legality of that seizure or search is not found in the criminal law, but in *Atkinson*.

Although the parties in this case have approached the question of the search of the backpack as administrative, neither of the parties has properly engaged with the *Atkinson* analysis as it applies to the seizure of the backpack. Before us, the state argues that it would be unreasonable to expect officers to leave property in a parking lot when taking someone into custody. As the state argues, "[r]equiring an intoxicated person to leave a bag with unknown contents in a public parking lot would not only leave the property unsecure but could also create a nuisance or pose a safety hazard to anyone who might come upon the bag." We do not disagree that an officer might reasonably want to bring property with a person to a detox facility, but a perception of reasonableness by the executive actor is not a substitute for the extra-executive control provided by "legislative enactments defining and limiting official authority[,]" as required by Article I, section 9. *Weist*, 302 Or at 376-77.

In the context of administrative seizure and search, the issue is not the reasonableness of an individual officer's

---

[1] In *Westlund*, this court construed *former* ORS 426.460 (1985) *renumbered as* ORS 430.399 (1995). 302 Or 225.

desire, or even need, to seize property, it is the source of authority for that seizure. We have explicitly rejected a generalized police community caretaking authority:

> "There is no generic 'community caretaking function.' Whether law enforcement officers have specific functions is a matter of statutory law. Whatever the existence, extent, or nature of community caretaking functions, however, mere exercise of any activity pursuant to one of them does not insure compliance with Article I, section 9. Any intrusion of state power upon a constitutionally protected interest, be it for civil or criminal investigative purposes, must comply with constitutional standards."

*State v. Bridewell*, 306 Or 231, 239, 759 P2d 1054 (1988). Generalized concerns for liability, even reasonable ones, are not the equivalent of a grant of authority to seize or search property. Generally, for both administrative seizure and search, *Atkinson* requires more—it requires the state to adduce (1) a source of authority for the seizure or search and (2) that the seizure or search was "conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the [seizure or search] involves no exercise of discretion by the law enforcement person." 298 Or at 10.

Like the parties, the Court of Appeals' approach did not grapple with the administrative nature of the seizure here. The Court of Appeals began its analysis in this case with its decision in *Edwards*, which concerned a seizure in the criminal investigatory context, not the administrative context. Given the framing and arguments of the parties, that approach by the Court of Appeals is entirely understandable, but it is nevertheless mistaken. For that reason, we conclude that the best remedy in this case is to vacate the decision of the Court of Appeals, and remand to that court for further proceedings so that court can benefit from briefing by the parties that correctly conceptualizes the issues consistent with this opinion. *See e.g.*, *State v. Guthrie*, 304 Or 52, 54, 741 P2d 509 (1987) (vacating the Court of Appeals' decision and remanding to that court for further proceedings where the Court of Appeals applied an incorrect legal theory). At that time, the parties, and the court, can consider whether ORS 430.399, or some other source of

authority, authorized the seizure of defendant's backpack, and, if so, whether that seizure was effectuated in accordance with the requirements of *Atkinson*.

The decision of the Court of Appeals is vacated, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.